The next case this morning is 523-0344, People v. Arrington. Arguing for the appellant is Sydney Warda. Arguing for the appellee is Nicholas Atwood. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note, only the clerk of the court is permitted to record these proceedings today. Before we begin, Mr. Atwood, I noticed that you filed a motion to cite additional authority in this case. You called it an unopposed motion, and indeed the state had a response to it. I'm just wondering why you did that. I mean, it misleads the court when you say it's unopposed and it seems like the state has an opposition to it. Was that just a mistake? Your Honor, I represent the state in this case. Yeah. And we did file an unopposed motion initially several months ago when the Sinisippi case was issued. But our agency has an agreement with the Office of the State Appellant Defender that we don't object to those motions when we do file them. And so that was pursuant to that agreement that we have with that agency. And we don't object when they file any type of a response to that motion. But I'm not sure it's truly unopposed. I'm just saying I was misled by the fact that when it was titled unopposed and then the state comes in and has a response to it, usually an unopposed motion doesn't have a response. So I'm curious. But now I understand that there's this agreement. So I appreciate that. I think it must be because the filing of the motion is not opposed, but the content of the motion certainly can be opposed. So I can understand how that can appear misleading. And I'll run that up the flagpole just so we can make sure. It's never been questioned before, but I understand Your Honor's concern. And thank you for bringing that to my attention. Okay. Well, I appreciate the explanation. Now I've learned something today. Okay. Ms. Warda, you represent the defendant. Are you ready to proceed? Yes, Justice. Okay. You may do so. May it please the court counsel. Mr. Arrington was convicted of unlawful possession of a weapon by a felon, but he should have a new trial because the two errors I plan to argue today likely contributed to the jury's verdict. First, Mr. Arrington's trial essentially began and ended with the jury hearing that he had been previously convicted of attempt armed violence. After hearing the conviction at the beginning of the trial, the jury was left to make the impermissible inference that because Mr. Arrington had possessed a weapon before, he was armed here too, before the jury had heard any evidence about this case. Then the jury was reminded of the attempt armed violence conviction when the court read a certified copy of conviction during the trial, and then four more times during jury instructions. The state concedes that counsel's performance was deficient for allowing the jury to hear the nature of Mr. Arrington's prior, but argues that there was no prejudice. But the risk of undue prejudice here was especially high because Mr. Arrington's prior felony was also a weapons based offense. The Illinois Supreme Court further in People v. Moore has made it clear that the risk of unfair prejudice from hearing the nature of a defendant's prior is inherent regardless of whether the jury was properly instructed. And with respect to prejudice, the evidence here was close. The trial pitted the circumstantial evidence of Mr. Arrington's presence in the car and the DNA on the gun against the eyewitness testimony of the two men in the car with who said that they, not Mr. Arrington, possessed the recovered weapons. Mr. Arrington's trial at, or I'm sorry, theory at trial was that the DNA was transferred to the gun without him possessing it, and the state's expert testimony indicated that Arrington's theory was certainly plausible, especially in these circumstances where Arrington and Brewer, one of the other men in the car, lived together. Brewer admitted to possessing the gun that Arrington was charged with, and Brewer's DNA was also found on the gun. The only thing that the state really needed to prove in this case was that Mr. Arrington possessed the gun, and hearing the nature of the prior offense here permitted the jury to form a picture of Mr. Arrington before it had heard any evidence that he was simply a bad guy who had the propensity to possess weapons. We cannot really know the extent to which hearing Mr. Arrington's prior conviction influenced the jury's ultimate verdict, and because of that he should have a new trial. However, that wasn't the only problem at Mr. Arrington's trial with respect to the issue of possession, which brings me to the second argument in the brief. After the state proceeded on a theory that Mr. Arrington actually possessed the recovered gun, the jury likely went into closing arguments understanding the state's theory of the case and what it meant to possess something as commonly understood. And Arrington must have also anticipated the state to argue in closing that he actually possessed the gun, since the presented no jury instructions regarding constructive possession, joint possession, or accountability at the instruction conference. However, the state didn't only argue that Arrington actually possessed the gun. Instead, it discussed the concepts of constructive possession and accountability using inaccurate examples, and then the jury was never properly instructed on those concepts. The state was essentially throwing all the theories of guilt for the possession against the wall to see what stuck, but if the state wanted to take that approach, it needed to make that clear before closing arguments. Regarding some of the prosecutor's statements, first the state told the jury that, quote, in constructive possession, there are some cases under the law if there is a can of beer in a car and it's sitting between the driver and the passenger and they both have the ability to that thing, that's constructive possession, end quote. This example left the jury with the notion that the state could meet its burden if it could show that Arrington was in the car and so was the gun, which simply isn't an accurate representation of what constructive possession is. And critically, the jury was never properly instructed on the concept, so there's really no way that they the elements of constructive possession to the facts here. In the same example, the state also invoked the theory of accountability, saying that the driver and the passenger of this hypothetical car, quote, can both be accountable, end quote, for the beer. This example fails to illustrate the theory of legal accountability, but perhaps more importantly, the word accountable is understood and likely served to incorrectly imply to the jury that it could hold Mr. Arrington accountable based on the admitted conduct of the other two men in the car who had already pled guilty to possession offenses. Again, the jury was never provided an accurate instruction of how someone can be legally accountable for something and were left to apply their lay understandings of the term. Then the state also argued that it didn't matter at all when Arrington possessed the gun, and the jury eventually heard IPI 301 over objection, which told the jury that the state did not have to prove Mr. Arrington possessed the gun on the particular date charged. But giving that instruction in these circumstances was problematic because the only time the instruction should be given, according to the committee notes, is when there's a variance between the date alleged and the evidence at trial, and that was not the case here. It was clear throughout trial that the state was trying to prove that Mr. Arrington possessed the gun on September 15th, 2020, the date charged in the information. Thus, the instruction here was unwarranted, and in these circumstances, hearing the instruction likely confused the jury about what the state needed to prove and essentially shifted the burden to Mr. Arrington to show that he never possessed the gun at any point in time. Arrington was not afforded an opportunity to adequately respond to the state's new theories because the state addressed them for the first time at closing arguments. People v. Edwards found an error in similar circumstances. Edwards found that it was error to instruct the jury on constructive possession during deliberation, where the parties had limited their argument to actual possession, reasoning that the constructive and actual possession have different elements, and introducing the theory of deliberations deprived the defendant of the opportunity to address it. And then people v. Millsap, the Illinois Supreme Court, found an error was not harmless in similar circumstances in the context of accountability. And Millsap significantly said that this error is one of constitutional magnitude because it infringes on the right to give closing arguments. And in some ways, this case was even worse than what happened in Edwards, because the jury here, the jury in Edwards was at least properly instructed on the actual law. Here, the jury was left to grapple with these legal concepts with only the state's confusing example, which broadened essentially what it meant to legally possess something. Again, if the state wanted to argue a barrage of theories at closing argument, it needed to make that clear by closing argument. So at Mr. Arrington's trial, where the only issue was whether he possessed the gun, before the jury heard any evidence, it was told that Mr. Arrington had a prior violent weapons-based felony, which the jury was then reminded of mid-trial and at the end of trial. Then before deliberations, the state broadened the theories of guilt with inaccurate examples that misled the jury. And the jury was never properly instructed on these concepts, leaving them with an incorrect understanding that Mr. Arrington could possess the gun simply because he was in the car with it, or he could be accountable for the two men in the car's admitted conduct. It's worth noting in concluding that this is not a sufficiency argument. Even though the state really tried to argue as such in its brief, whether the jury could reasonably infer possession based on the presence of DNA is not the issue. The issue is whether in light of these errors, which both touch the only issue at trial, this is a verdict worthy of confidence. And Mr. Arrington has shown that it's not, and he was prejudiced by these errors, and he should have a new trial. Regarding our Second Amendment claim, we would stand on the brief and the supplemental brief that I filed yesterday, if your honors don't have any other questions about that topic. Does that conclude your argument, Ms. Warner? Yeah, I'm sorry, your honor. Yes, it does. All right. Justice Barberis, questions? No, thank you. Justice Schorler? No questions. All right. Thank you, Ms. Warner. You'll have a few minutes for rebuttal. Mr. Atwood for the state. Good morning, your honors. Counsel may please the court. My name is Nicholas Atwood, and I represent the people of the state of Illinois in this matter. I'm going to address a few of the things the defendant has said regarding issues one and two, but for the most part, I'll stand on my brief on that, and I'll devote most of my argument to the issue regarding the application of Bruin and Rahimi on the constitutional issue in this case. Defense counsel argues that the state's sufficiency of the evidence argument is not essentially appropriate in this context, but it is if we consider the way this claim has been raised. It's raised under issue one, an ineffective assistance of counsel claim, and as counsel noted, we can see that's unreasonable for counsel to allow the nature of the felony to be heard at trial, but defendant has the burden of showing a reasonable probability of a different result, not just the possibility of a different result, a probability of a different result. And for this court to analyze that question, it necessarily has to review the evidence that was presented to the jury. And with regard to the first issue of possession, first and foremost, the defendant's DNA was on not one, but two separate firearms. The handgun, he was the majority profile. The magazine, which was inside the handgun, he was the only profile. That creates a clear inference of possession, actual possession, not just constructive or joint as was touched on a little bit in closing arguments. Let me stop you for one second. If I understood what you just said, you said that his DNA was on two firearms. Well, I think the magazine would be considered a firearm for the purposes of the unlawful possession of a weapon by a felon statute. It's not in and of itself a firearm, but if he were to have just possessed the magazine, he would be guilty of UPWF. Certainly, thank you for clarifying. Mr. Atwood, it is true that by his DNA, he may have been in possession. He may have touched. I don't know. Is touching and possession the same thing? I don't believe any court has said that touching is not possession. We do have to show knowledge and control, but knowledge and control may both be inferred by the evidence presented at trial. And this brings me to the Cook case, the third district case, which was a similar factual pattern. The defendant was among several individuals inside of a van. The officers searched the van and found a firearm underneath of a red hat. Now, notably, the firearm did not have the defendant's DNA on it. Only the red hat did. But the court in the third district affirmed that conviction, finding that it created a reasonable inference that the defendant had possessed the firearm because he was in the vehicle, the firearm was open and obvious, and his DNA was on the hat that covered the firearm. That's even less facts than this case has that supports possession, where we have actual DNA. I think the reasonable inference for the jury in this case is not that he didn't possess it, but that the defendant himself first loaded the magazine into the firearm because his DNA is the only DNA on the magazine. And then when they were dropping the firearms outside of the vehicle, he passed it to one of the others. And that's how other DNA profiles became on the outside of the handgun itself. I think that's the reasonable inference here. And so if we're going to look about a probability of a different result, the jury is going to apply its common sense. And they simply didn't buy the defendant's theory of the case that some accidental transference onto multiple different parts of this handgun resulted in the defendant's DNA being there in consideration of the fact of the gun being open and obvious in the car, the nature of how the gun had to be thrown out the window. The facts supported that. And so I think if we're going to the actual prejudice to the defendant by them knowing his prior conviction, there was far more evidence that established actual possession. And that leads me sort of into the second issue when we're talking about the prosecutor's arguments, which were all prefaced as argument. Prosecutors stated these are inferences that can be made from the evidence that was presented. And none of those inferences were far afield as would be required to establish prosecutorial misconduct. One of the things, oh, I do briefly want to touch on something in the reply brief is back with regard to issue one. Defendant cited a couple of cases regarding DNA was Stitz and Jackson. Those cases were easily distinguishable from this case in Stitz. There was the defendant's DNA on the firearm, but they said the evidence was closely balanced in an attempted murder case. Well, the evidence in that case showed that somebody threw the firearm from the window of residence after fleeing the scene of the shooting. So there was no eyewitness that the defendant was present when the shooting actually occurred. And his DNA could have been placed on the firearm when it was thrown from the window. I think the police officers actually observed that. That's clearly distinguishable from how the DNA could have gotten on the firearm in this case. In Jackson, the evidence was considered closely balanced because there was no evidence attached to any weapon that had DNA on it. When he stabbed, when the ant was stabbed, the only evidence of blood of the defendant, his DNA was in the bathroom, but he lived in the same residence. And there are obviously other innocent explanations. Perhaps he'd had a cut and washed his hand in the sink. Perhaps he cut himself shaving. Those are different cases than the present case. But getting back to the closing argument, the jury's allowed, the prosecutor's allowed to argue reasonable inferences. And the defense counsel argues about the constructive possession theory should have been given, the jury should have been instructed on it. But the law is clear here. The jury was not instructed as to a constructive possession or a joint possession theory. They were instructed to an actual possession theory. The jury is presumed to follow the instructions of law that they are given. And so what about the fact that the prosecutor is arguing constructive possession, even though there's no jury instruction given? I mean, while you're correct that the jury is presumed to follow the instructions given, they're also listening to the argument and the analogies made on constructive possession. For example, the beer can. How do you explain that? Well, Your Honor, I can't explain it because I'm not exactly sure what was the prosecutor was thinking in that regard. But I know if we apply the law to that situation, there's no evidence that the jury would have been swayed by that. They were instructed. It's the arguments of the attorneys, it's inferences that were made, but they were given written instructions to take back and they were told to apply only those instructions. So we have to presume that the jury disregarded that argument and only applied the instructions that they were given. And with that, what case would you rely on to say that we must disregard the fact that the jury listened to the closing argument? It's not that we have to disregard the instructions. There's numerous cases that say they're presumed to follow the instructions. No, what case? I want a case that follows your argument that says they disregarded what the prosecutor said and only followed the instruction given. It's the disregard part that's causing me trouble. Well, my reading of the case law is that if they are presumed to follow the instructions, then they must have disregarded evidence or argument to the contrary because the arguments are not evidence. Just because he was found guilty, they must have disregarded the arguments. They could have accepted the argument and said, well, if he was in the car, he must have been in possession. Well, Your Honor, we have to remember they have to show clear error in this case. And on the other side of that coin, we would be presuming that they ignored the instruction and followed the argument under defendant's theory and that they were somehow swayed. Wait, wait, wait. Before you say go further, you said you must show clear error. You're talking about plain error review. Correct. So you must show that an error occurred. Right. That's the first one. And prejudice. Yes. So if the prosecutor went too far and there was error because no instruction was given on constructive possession, for example, if we can show error or the defense can show error, where's the prejudice here? Or why is there no prejudice here? There's no prejudice because of the fact that his actual DNA was found on that firearm and it establishes actual possession was the leading theory in this case. It wasn't necessary to show he was amongst those individuals. It would have been easier for the state to give a constructive possession theory because it would have centrally lowered the burden that they had to prove. But instead, they went for the higher burden of proving actual possession because the evidence was so strong in this case. And briefly, I'd like to turn to the Rahimi and Burns case with regard to Rahimi. Defendant made a number of claims that there are no that he's for one, he is part of the people for purposes of the Second Amendment. The case law has been pretty consistent, although the vast majority of cases have found that felons are not part of law abiding citizens that are protected under the Second Amendment. Rahimi didn't even with the law abiding issue. They dealt with the term responsible, which they concluded was vague, although in the oral argument transcripts responsible was actually defined by one of the justices as nonviolent. Obviously, defendant wouldn't fall under that. But when we're looking at Rahimi in these other cases, Your Honor, may I briefly conclude? I see that I'm out of time. Yes, you may. Of the thousands of cases interpreting Bruin, none of them have said that violent convicted felon should possess firearms. The historical regulations are clear. The going armed common law statute does not have a time limit attached to it. Defendant says there's no evidence that these historical regulations resulted in permanent bans. The going armed statute was a punishment common law provision. It disarmed and imprisoned exactly like our unlawful possession of a weapon by a felon statute does. And moreover, there's no case that says the going armed statutes were temporary. Those were the surety statutes that involve temporary disarmament. So I think when we're looking at relevant historical analog, we don't need a dead ringer or a historical twin. We need a relevant, similar provision. And the ratifiers, much like our modern regulations today, use their common sense when they disarmed violent individuals. This much was true in the Pennsylvania and Massachusetts conventions where the United States v. Scoin case that I cited referred to the fact that the framers had lobbied for a provision in the second amendment that said non-peaceable citizens or criminals would not have that right. But it ultimately wasn't included because, quote, it was understood that such amendment would not provide them the right to possess firearms. And with that, your honors, I would ask that this court, if there are no further questions, affirm the judgment of the trial court in this matter. Thank you. Mr. Atwood, I have a question for you. You're relying on People v. Cook? Yes. In Cook, it seems that the defendant was seen in the back of the car with the gun closest to him by an officer. We don't have that here, do we? We don't have an officer seeing it in his hand, but that wasn't the case in Cook either. The officer saw him. I didn't say that. I didn't say it was in his hand. The firearm was close in Cook. We have DNA present on the firearm in this case. But we don't know when that DNA was put there. We don't. That was defendant's theory of the case. That speaks to the 3.01 issue. Defendant made the timing an issue. It could have been days or weeks before. But in the brief, we noted defendant was convicted of a felony six years earlier. And defense counsel didn't challenge that this somehow could have been transferred six years earlier when he wasn't a felon. And the state's not required to prove his exact date. Well, you just can't prove any date, right? Under 3.01? That's correct. I agree with that. So how do you respond to the 3.01 instruction? I think with regard to that, the defense counsel should have objected to that instruction being admitted. But the problem with that was his whole theory of the case was essentially conceding. It could have happened at any other time. They focused on the transference element. They denied possession at all. So essentially, this is becoming an invited error argument where their whole strategy hinged on the fact not that I didn't touch it on that day, I never touched it ever. And so that's the state can only deal with the issue that's presented to them in court. I didn't follow the invited error comment. So the defendant's strategy was we never touched it. So we don't even need to object to a 3.01 instruction because we're not saying he didn't touch it on the 15th, the 14th, the 13th, the 12th of September. We're saying he never touched it at all. And so now on appeal, when defendant has framed the entire argument that way, he's now complaining that it was improper to give this instruction, but he never prevented that obstruction from being given. That's invited error because the state was able to use that instruction to try to prove their case. So he invited that use of 3.01 because he didn't dispute the date. He disputed possession solely. Okay, thank you. Justice Barbaros, any questions? No, thank you. Justice Shuler? No questions. All right. Ms. Warda, could you respond to the issue that I raised about the 3.01 instruction that you argued? With regard to it as invited error? Yes, that you're raising it now even though the argument at trial was different. I think it's more plain error than invited error, but... Agreed. First, this isn't invited error because the doctrine of invited error, it just forbids a defendant from appealing a ruling or action that the defendant affirmatively acquiesced. Here, trial counsel objected to the state's statement that basically they didn't have to prove at all when Mr. Arrington possessed the gun, and then didn't acquiesce to the reading of the jury instruction. So it doesn't qualify as invited error. And actually, Mr. Arrington's theory that his DNA was transferred onto the gun doesn't necessarily implicate the date charged. The state's own expert testimony made it clear that DNA can arrive on an object if the person didn't touch it at all. So that doesn't really Mr. Arrington saying, oh, well, you can't prove the exact date. He's just saying you can't prove that I possessed it at all because the DNA doesn't necessarily prove possession, whether constructive or actual, because it can arrive on the object without him possessing it, as we understand dominion or control and knowledge. So is the defense that I didn't possess it within the term as that is used under the law, or I didn't touch it? That's why I asked originally, is there a difference between touching and possessing? What was his defense here? The defense was that he didn't possess it, that his DNA arrived on the object without either him touching it or via constructive possession having the ability to control it. So here, giving that instruction was confusing. It's only supposed to be given when there's a variance in the date charged and the evidence at trial. Throughout trial, the state wanted to prove that Mr. Arrington possessed the gun on a single day, September 15th, 2020. And so giving this instruction now opened up the world to basically Mr. Arrington having to show that he never possessed the gun at any point based on what the state argued at trial. Thank you. Thanks, Your Honor. Also, just to be clear, the jury was not instructed on possession because when actual possession is the only issue, the instruction 4.16 typically isn't given. And that was an issue here because then the jury was told, wait, it's not just possession as you commonly understand it. There's also this theory under the law of constructive possession, which would allow you to find Mr. Arrington guilty if we can show that he was in the car at the same time as the gun. And that's not what constructive possession is. And now the jury has this theory of this other theory that they could possibly find Mr. Arrington guilty that isn't actually accurate under the law. To address the state's using of Cook, again, Cook was a reasonable doubt issue. This is not a sufficiency argument. The measure of whether there was error here and whether Mr. Arrington was prejudiced is whether or not the jury, there was a reasonable probability that the jury would have put forth a different result or whether their verdict here was one that's worthy of confidence. It's simply not anymore because of the two errors I discussed in opening that both directly implicated the only issue. And finally, to Bruin, Bruin's test is clear. First, look at the text of the Second Amendment. The text of the Second Amendment does not include the words law abiding or responsible. It doesn't. It applies to all Americans. That's what Heller has said. And that's what other amendments that address individual rights, that that's what that not just some Americans, all. And Bruin requires a statute to be similar how and why. And here the state can't show permanent disarmament. So in concluding, I'd ask that this court either reverse and remand for a new trial or simply vacate his conviction because it's unconstitutional. So just one question, if you may, if I may, Justice Cates, with regard to the Second Amendment argument then and your discussion just now. So if a person is a convicted felon and there's no permanency to the restriction of prohibition of firearms, when does a person who is a convicted felon reacquire their right to possess a firearm? That's a great question, Your Honor. I don't think that that Bruin or Rahimi necessarily make it clear when someone no longer is, quote unquote, you know, a danger to others. Though Rahimi inches us closer to that because it says that there has to be some kind of adjudication that a person is currently a danger to others. So, you know, tying disarmament to felon status, especially now when there are so many felonies that don't implicate violent conduct or, you know, an ability to possess a firearm, it's really like, as the law is now, it's completely untethered to what Rahimi has said is sort of the standard for when we disarm people. Okay. Any further questions, Justice Barbier? No, thank you. Justice Scholar? No questions. All right. Thank you both for your arguments here today. We will take this matter under advisement and issue an order in due course.